IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEPHEN PAUL EDMUND SUTTON,<br><br>Defendant. | Criminal No. 20-cr-0252-1 (APM)<br><br>MOTION FOR PRETRIAL RELEASE |

### DEFENDANT STEPHEN SUTTON'S MOTION FOR PRETRIAL RELEASE

Defendant Stephen Sutton, by and through counsel, respectfully submits this motion for pretrial release and to allow Mr. Sutton to return to the United Kingdom pending trial. Mr. Sutton recognizes that this is a difficult request of the Court because he is a foreign national. However, pretrial release is appropriate here given:

- that the alleged conduct is nonviolent;
- the small dollar value of the alleged fraud – $194,064, of which the government alleges Mr. Sutton received just $21,794;
- the low expected Sentencing Guideline offense level, even after a conviction at trial, of 10; and
- Mr. Sutton's demonstrated record of compliance with his bail conditions in the United Kingdom.

Mr. Sutton is his family's primary breadwinner and supports his son who currently lives at home for medical reasons. Further, this is not a presumption case under 3142(e)(2) and, thus, detention is inappropriate. The overall circumstances of Mr. Sutton's case make Mr. Sutton a minimal flight risk and counsel in favor of pretrial release, and for him to return to the United Kingdom pending trial.

On February 21, 2023, Mr. Sutton was arrested at his home in Wales. The next day, he was produced at Westminster Magistrates Court for his initial hearing as required by the UK's Extradition Act of 2003. He surrendered his passport and was released on conditional bail. He has complied with his United Kingdom bail conditions the last two years while lawfully availing himself of the extradition process afforded to him. Mr. Sutton presented himself to the U.S. Marshals Service at Heathrow Airport on May 1, 2025, as commanded, and surrendered voluntarily. On May 2, 2025, Mr. Sutton was extradited to the United States.

Pretrial detention is inappropriate here under 18 U.S.C. § 3142 as a combination of conditions can reasonably assure that Mr. Sutton will appear at trial, and that he is not a danger to the community. Mr. Sutton's history and characteristics indicate that he will abide by his bail conditions and all court orders. Mr. Sutton awaits his day in court and is committed to clearing his name of the charges against him. As demonstrated by his compliance with his bail conditions in the United Kingdom, Mr. Sutton is willing, able, and ready to comply with the terms of any pretrial release ordered by this Court.

## BACKGROUND

Mr. Sutton is a British national who has never set foot on American soil. He has no criminal background, and no history of noncompliance with court orders or failure to appear for a court date. He is the primary breadwinner for his wife and son, with his son requiring significant care and attention. Mr. Sutton's son currently lives at home as he battles depression due to grief from the passing of his mother from stage-4 cancer. Mr. Sutton's son also suffered from a seizure in 2023.

Mr. Sutton joined the British military when he was approximately 17 years old and served for 23 years. After leaving as a highly decorated warrant officer with a good conduct medal,

Mr. Sutton joined the International Resource Group (IRG) as a Logistics Operations Manager, where he evaluated bids for supply subcontractors and awarded subcontracts. From 2012 until 2015, Mr. Sutton worked in this role, assisting IRG with a USAID-funded power distribution program (PDP) in Pakistan.

After receiving a WhatsApp call from a U.S. investigator in or around January 2020 requesting Mr. Sutton's help with an investigation into the power distribution program for USAID, Mr. Sutton met with USAID officials in Wales. Mr. Sutton subsequently heard nothing about this investigation until he was arrested almost three years later in 2023.

On November 17, 2020, a grand jury returned a two-count indictment, charging Mr. Sutton with participating in a scheme to defraud USAID and IRG. Mr. Sutton's likely Sentencing Guidelines offense level, even if he is convicted at trial, is a 10. Accordingly, if detained pending trial and ultimately found guilty by a jury, Mr. Sutton will likely serve more than a Guidelines-range sentence by the time judgment is entered in this case.

## APPLICABLE LAW

The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. A defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). A judicial officer is required to "order the pretrial release" of a defendant unless "the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). "Reasonably assure" does not mean "guarantee." *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996). The threshold to find that pretrial release will not reasonably assure appearance or will endanger the community is high: the court must support this finding in

writing with "clear and convincing evidence." *United States v. Salerno,* 481 U.S. 739, 742 (1987) (citing 18 U.S.C. § 3142(f)).

In considering pretrial release, courts ultimately evaluate whether the defendant is a 'flight risk' or 'danger to the community.' *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). This inquiry consists of four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4). The history and characteristics of the person include: (a) "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and (b) "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C, § 3142(g)(3).

If a court finds that the release outlined in 18 U.S.C. § 3142(b) will not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community" then pretrial release can be subject to "the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at § 3142(c)(1)(B).

Courts across the country have recognized that the mere fact that a defendant is a foreign national is not a sufficient basis to deny bail. Notably "persons who are not citizens must be treated under [18 U.S.C § 3142] like all other persons charged with an offense." *United States v. Trujillo-*

4

*Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012); *see also United States v. Hernandez-Bourdier*, 2017 WL 56033, at *11 (W.D. Pa. Jan. 5, 2017).

## DISCUSSION

Mr. Sutton's circumstances are different from those of almost all defendants before this Court. Mr. Sutton is accused of nonviolent, small-dollar-value fraud, and has a demonstrated history of compliance with his bail. If Mr. Sutton was an American citizen, pretrial release would be uncontested by the government. However, because he is a foreign national, the government seeks pretrial detention. The collateral consequences of pretrial detention in comparison to the gravity of the offense alleged here are extraordinary. Mr. Sutton is his family's primary breadwinner. Time spent in a U.S. jail prior to trial will eliminate his ability to provide for them.

Mr. Sutton is not a flight risk. Because his British extradition proceedings are exhausted, if he were to fail to appear for trial, he would be immediately arrested and extradited and unquestionably detained in the United States. To be sure, Mr. Sutton has no reason to flee because he must provide for his family.

Notably, the government, in seeking Mr. Sutton's extradition, was clear that this is not a case where there is a presumption of detention. In a September 7, 2023 declaration from Special AUSA Nicholas Coates, the government asserted as much:

> [I]f and when Mr. Sutton is extradited to the United States, he will be afforded the same rights due all defendants, beginning with the presumption that they are innocent of the charges they are accused of committing. With this presumption Mr. Sutton, like every federal defendant, will have the right to request release pending trial. *Pretrial detention is not a foregone conclusion*.

Decl. of Nicholas Coates, at ¶ 7 (*See* Ex. A) (emphasis added).

### A. Nature of the Charged Offenses and Weight of the Evidence

The nature of the charges against Mr. Sutton weighs in favor of granting pretrial release. The charges against Mr. Sutton focus entirely on non-violent conspiracy and fraud concerning a program receiving federal funds. Courts have granted pretrial release for foreign defendants charged with non-violent financial crimes of far greater value, when the defendants had significant resources available to them. *See, e.g., United States v. Johnson*, No. 1:16-cr-00457, ECF Nos. 1 & 5 (E.D.N.Y.) (allowing defendant on pretrial release to return to the United Kingdom in currency fixing conspiracy and wire fraud case); *United States v. Usher*, No. 1:17-cr-00019, ECF No. 1 and 7/17/2017 Minute Entry (S.D.N.Y.) (granting bail to three United Kingdom citizens accused of currency fixing conspiracy in Sherman Antitrust Act case); *United States v. Flotron*, No. 3:17-cr-00220, ECF No. 10 (D. Conn.) (setting conditions of release for Swiss defendant in spoofing case).

In *Johnson*, the court permitted the defendant, who ultimately was convicted of wire fraud and conspiracy to commit wire fraud in connection with a foreign currency exchange ("FX") transaction, to return to the United Kingdom pending trial. *See Johnson*, No. 1:16-cr-00457 at ECF No. 9 & 3/15/2017 Minute Entry. The defendant in *Johnson*, like Mr. Sutton, was accused of a non-violent offense, was the primary breadwinner for his wife and children, and had previously complied with his bail conditions in the United Kingdom. *See Johnson*, No. 1:16-cr-00457 at ECF No. 43.

The differences between Mr. Sutton and the defendant in *Johnson* are only a matter of resources. Unlike Mr. Sutton, the defendant in *Johnson* was the former global head of the foreign exchange trading desk at a prestigious investment bank. *Johnson*, No. 1:16-cr-00457 at ECF No. 9. And unlike Mr. Sutton, the defendant in *Johnson* was alleged to have taken part in a scheme involving hundreds of millions of dollars in fraudulent wires. *Id.* Yet, in *Johnson*, the court

permitted a well-resourced defendant accused of a fraud exponentially larger than the alleged scheme here to return to the United Kingdom on bail conditions the defendant complied throughout the proceedings and sentencing. *See, e.g.*, *Johnson*, No. 1:16-cr-00457 at 3/15/2017 and 8/21/2017 Minute Entries.

*Usher*, another FX fix case, is exemplative of the same principles guiding pretrial release in *Johnson*. In *Usher*, the three defendants were alleged to have conspired to manipulate the price of U.S. dollars and euros on the FX spot market in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). *Usher*, No. 1:17-cr-00019 at ECF No. 1. In jointly proposed bail conditions, the court in *Usher* granted all three defendants pretrial release to return to the United Kingdom pending trial. Notably, the defendants in *Usher* supported their application for pretrial release by contending that their alleged conduct occurred many years prior to their arraignment, they were no longer involved in the financial services industry, and they needed to support their families back home. *Usher*, No. 1:17-cr-00019 at ECF No. 12. All three defendants returned to the United States to stand trial and were acquitted of the charges against them.

If anything, the defendants in these other cases posed greater flight risks. They were professional employees of global investment banks with access to millions of dollars in resources with which to flee. Mr. Sutton is an indigent truck driver in Wales, represented by CJA counsel, who can barely afford to provide for his family. The only material difference between these other defendants and Mr. Sutton, therefore, is that they were wealthy, and he is not.

And there is nothing about the nature of the alleged charges or weight of the evidence – that Mr. Sutton participated in a scheme to deceive his employer to obtain about $20,000 – that suggests Mr. Sutton is an inappropriate candidate for pretrial release. Mr. Sutton has viable defenses he intends to present at trial (Mr. Sutton filed a motion to dismiss the indictment on

multiple grounds in April 2024). Mr. Sutton will need time to review the evidence of the scheme the government asserts he participated in and, if he is detained, will have a more difficult time to actively participate in his defense and meet with his counsel. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972) ("[I]f a defendant is [detained], he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.").

In sum, the nature of the charges and weight of the evidence do not support pretrial detention.

### B.    History of the Defendant

Mr. Sutton's personal history and character demonstrate that he is not a flight risk. Mr. Sutton has no criminal record. For over two decades he served in the British Armed Forces, working alongside the U.S. military in Operation Desert Storm. When Mr. Sutton retired in 2011, he had achieved the rank of Warrant Officer Class 3, the second highest solider rank of the British Army. For both his achievements and character, Mr. Sutton was awarded the Long Service and Good Conduct Medal for serving at least fifteen years with a clear record of no misconduct.

In addition to his dedication to service and clean record, Mr. Sutton is also a family man: he is the father of three children ages 28, 22, and 19, and currently lives with his wife of nearly ten years. Mr. Sutton is the primary breadwinner for his family, currently working night shifts as a contractor for S&S Logistics Services, Limited.

Mr. Sutton has complied with his bail conditions in the United Kingdom for the past two years. Mr. Sutton's history demonstrates support for his family and compliance with the law. If granted pretrial release with permission to return to the United Kingdom pending trial, Mr. Sutton's history demonstrates that he would comply with that order and vindicate his name in court.

      **C.**      **Nature and Seriousness of the Danger to any Person or the Community that Would be Posed by the Person's Release**

There is no evidence to suggest that Mr. Sutton would pose any danger to the United States or his community in the United Kingdom. He is not a flight risk and his alleged conduct was nonviolent. A finding that an individual is a flight risk must be supported by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 238–29 (D.C. Cir. 1986).

Mr. Sutton is accused of a non-violent financial crime which carries a low penalty, as demonstrated by the plea deal initially offered to him. Courts have held that this type of background supports a Defendant not being a flight risk. *See, e.g., Vasquez-Benitez*, 919 F.3d at 551 (finding that trial judges did not err in ruling that a defendant who had never been convicted of a violent crime, demonstrated a willingness to show up to judicial proceedings, had a job, and had a wife and two kids was not a flight risk).

* * *

Mr. Sutton will comply with the conditions of pretrial release the Court orders. As the primary breadwinner of his family, Mr. Sutton requests he be permitted to return to the United Kingdom as he waits for trial. Mr. Sutton will surrender his passport to either his lawyers in London or the police in the United Kingdom until it is time to return to the United States for trial. Mr. Sutton is also prepared to sign a waiver of extradition, recognizing that if he fails to appear he will be extradited regardless.

If Mr. Sutton were any other domestic defendant accused of the conduct he is alleged to have committed, he would undoubtedly be granted bail. The court can be confident that Mr. Sutton will comply with his pretrial release conditions and appear for trial.

## CONCLUSION

Given the foregoing, Defendant Stephen Sutton respectfully requests the Court grant him pretrial release and be permitted to return to the United Kingdom, and any other relief the Court deems proper.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: May 3, 2025

By: /s/ Justin Weitz
Justin Weitz, Bar No. 90008910
justin.weitz@morganlewis.com

Daniel C. Fishbein, Bar No. 7672528
Cass Hastie (*admission forthcoming*)
Moshe Klein (*admission forthcoming*)

1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:   +1.202.739.3000
Facsimile:   +1.202.739.3001

*Attorneys for Defendant Stephen Sutton*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 3, 2025, a copy of the foregoing Motion for Pretrial Release was filed electronically. Notice of this filing will be sent by e-mail to all parties via the Court's electronic filing system.

Dated May 3, 2025                                    MORGAN, LEWIS & BOCKIUS LLP

                                                          By: /s/ Justin Weitz
                                                              Justin Weitz, Bar No. 90008910
                                                              justin.weitz@morganlewis.com

                                                              Daniel C. Fishbein, Bar No. 7672528
                                                              Cass Hastie (*admission forthcoming*)
                                                              Moshe Klein (*admission forthcoming*)

                                                              1111 Pennsylvania Avenue, NW
                                                              Washington, DC  20004
                                                              Telephone:     +1.202.739.3000
                                                              Facsimile:      +1.202.739.3001

                                                              ***Attorneys for Defendant Stephen Sutton***